Number 21-2093, Gellis, et al., the BMW of North America, Mr. Dalton, Mr. Grafman or Grafman?  Grafman, and Mr. Nagel, whenever you're ready. Good morning, Your Honors. May it please the Court. My name is Chris Dalton. I'm with Buchanan, Ingersoll & Rooney in Newark, New Jersey. Your Honors, former stomping grounds. On behalf of BMW of North America, with me are my colleagues Jackie Wayand, Gita Marco, and Melissa Bailey. The Court has allocated, I believe, 20 minutes per side for this argument. Yeah, I'm not sure we're going to need all of it, but let's see what we have. Can I reserve five just in case? Absolutely. Okay, thank you, Judge. This is BMW of North America's appeal from a disputed contested fee application in the district court below, arising out of the settlement of a class action lawsuit involving allegedly defective timing chains in certain BMW vehicles. The parties settled the dispute very early in the litigation. There was a pre-answer motion to dismiss, a consolidated amended complaint, and about four months of discovery. The parties went to mediation after four months of discovery. Within one day of mediation, we resolved the substantive issues for the class. But after another two sessions, we were unable to resolve the question of counsel fees for class counsel. Consequently, we agreed to a high-low, essentially, of $1.7 million to $3.7 million. Were any conditions or outlines laid out for that high-low? In the settlement agreement, it just simply said that it would be a contested high-low agreement, and as class counsel point out in their brief, that the parties would submit briefing on it. It was page section H of paragraph, excuse me, paragraph H of section 10, sets forth the specifics. I can grab it. Grab it if you want. And you'd be free to object? We would be free to object. It would be a contested fee application that would be submitted to the district court, and the language in the settlement agreement was for final evaluation and decision. And class counsel said that that means that this is a final and unappealable and unassailable decision by the district court, with which we do disagree, because for two reasons, and they kind of go to the questions that the panel asked. The first question that the panel asked, and I'm going to kind of dive right into what you asked for us, can this, excuse me, the second question, can this court reverse a district court for failure to follow its local civil rules? And the answer is yes. This court said two years ago, in 2000, in a case called Applied Fluid Systems, that a district court can deviate from its local civil rules if it has a sound and announced and explained reason for doing so, and if doing so does not unfairly prejudice one of the parties. How did Judge Walder deviate from local civil rules? Certainly, Judge. First, local civil rule 54.2A requires that on a fee application, that the party seeking the fees has to submit certain information to the court in order to determine whether those fees are fair and reasonable. The specific requirements are the nature of the services rendered, the date, a record of the dates that those services were rendered, who rendered those services, and what time they spent rendering such services. Essentially, what I, in private practice, and Your Honors, when you were in private practice, had to do, billing sheets. So how did this fall short? The court accepted three summary charts that consolidated nearly 2,200 hours of attorney and paralegal billing time across three law firms and 16 timekeepers. Is the violation of local rules the basis on which you would like us to decide this appeal? That is part of it, yes. It's the violation of the local civil rules as well as the district court's failure to follow Supreme Court precedent from the city of Burlington against Dagway and the 2010 decision in Purdue against Kenney A. Help me out. What was the specific violation that Judge Walder committed? Sure. The judge did not require class counsel to submit detailed billing records that would demonstrate who did what. We have a summary. You say the judge did not require it. She did not require it. In fact, class counsel point out in their brief that they offered to provide in camera to Judge Walder the billing records. She declined that. But the bigger problem is that neither BMW of North America, who is ultimately paying the bill, nor the class, that is their clients, had the opportunity to comment on whether the bills were fair and reasonable. And we had 2,200 hours of time for a case that had a motion to dismiss, four months of paper discovery, and then settlement. She said, kind of curiously, I find that the bills submitted were definitely sufficient in information as well. There's no record of bills being submitted, is there? No, it's the three summary timesheets. And the only thing I can analyze from those timesheets, Your Honors, is of those nearly 2,200 hours, 2,000 of them were performed by partners at rates of $600, $700, $800 an hour. If I did that to any of my private paying clients, I would be exhoriated. So how do we know that the right people were doing the right work? I don't know if six people sat down at a table full of pizzas for five hours and just shot the breeze. It sounds like you're not very content about the fees themselves and what is being charged. I'd like to know what this Court has said. I'm thinking of the range itself that the district judge arrived at. How did she arrive at that? I think it was something like, was that the $3.7 million or something like that? The basis of $2.2 or something like that? So the range was $1.5 million to $3.7 million. $1.5. And when we negotiated that, we anticipated, as the settlement agreement called for, the disputed contested application. Everybody in the room say, okay, that's fine, we'll work on that. We're going to do the contested application $1.5 to $3.7. So you were content with the range that she arrived at? We were content with the range. We were content with the range, provided class counsel could support the application. Where did the $1.9 come from? Well, initially it was $1.7 that class counsel came up with. No, I'm talking about the multiplier. Oh, the $1.9 multiplier? That was class counsel's submission that was, we have a $1.7 lodestar, and we want to get to the $3.7, so judge, do a $1.9 multiplier. But here's the problem, and that's what the second part of our appeal is about. City of Burlington against Dagway, the Purdue against Kenny A case have said that in a fee-shifting case, in a lodestar case, which is what this is, this is not a common fund where we're taking a percentage. In a lodestar case, only in exceptional rare instances, and that was Justice Alito, your former colleague, saying that. And there was neither any articulation by the court that this was an exceptional case, that the circumstances warranted some sort of enhancement of the fee, of the lodestar fee. And it actually got it reversed. Was this in a hearing in a courtroom? This was by Zoom. Okay. Well, I'm just wondering because it is at least a $2 million range. Did somebody raise their hand and said, wait a minute, that's a little bit too much, or we disagree, or we oppose? We argued before. We had a Zoom argument with Judge Walter on August 28th of last year, in which I raised these issues that were raised in our briefing about the requirements under the local civil rules, under this court's decision in road against, I'm going to mangle it, Dela Capri in 1988, in terms of what's required when you're making a fee application. And all we had, to Judge Rendell's point, was just summary charts, nothing to give the district court. And this court said 27 years ago in the GM pickup truck liability litigation that the district court has an obligation to thoroughly review the submissions on an attorney's fee application. Road gave some general prescriptions. It did. Something must be specific enough to allow the district court to determine if the hours claimed are unreasonable, some fairly definite information as to the hours devoted. But it's general. What is fairly definite? What is fairly definite, I would suggest, I was going to play show and tell, Judge, to come down and show you what I had to submit 10 years ago when I had a fee application, and it was about that thick for $350,000. How are the charts lacking? How are the charts lacking? How are the charts lacking? There's no information about who did what and when, as the local civil rule requires. And for how long? And for how long. And so there's no way of determining. Like, as this court has said, and other courts have said, are the hours reasonable or not? Are they redundant? It's only 100 hours drafting the amended complaint. It's a little, maybe it's a little much. I don't know if a partner at $850 an hour drafted the first set of interrogatories. I don't know that. And the district court didn't know that. And the GM pickup truck case said, specifically, in the class action context, in a fee application, the court has to scrutinize it. And that's consistent. That was in 1995. Your Honor's predicted what the advisory committee on Rule 23 would say in 2003, which is that judicial scrutiny of fee applications in this context is absolutely necessary, regardless of whether it's a common fund or the defendant is paying it separately. It doesn't matter where it's coming from, the mode of payment. It doesn't even matter if it's objected to. The district court has to engage in that analysis. And that didn't happen here. And that's why the court abused its discretion. And, again, compounded that abuse of discretion by adding an improper multiplier on the fee award. And we full well know, I will be candid, BMW understands. We could get a decision from this court that says district courts, you must do these things. And, specifically, district of New Jersey courts, you have to follow local Civil Rule 54.2. Or, as 54.2c says, excuse the party from doing that, which did not happen here. And the court could reiterate, don't put multipliers on top of load stars. And we could go back down to the district court and still get an adverse decision. But if it's done the right way, if it's done the right way, fine, so be it. But as class counsel have noted, this is not BMW of North America's first objection in a contested fee application. It may not be our last. And we're not certainly the only entity, the only defendant or party that engages in contested fee applications. And so if the district courts aren't following the rules, they need to be reminded to follow the rules. There's a huge difference between the lower figure and the higher figure that the court used in Judge Walder, 1.5 million and 3.7 million. Indeed. And that's where the- Doubles, certainly. It almost doubles. But did you object at the moment that you were advised by the, I guess the defendants in this case, we're getting 3.7 million and she, and I think it was this mild objection to it, and she nonetheless said 3.7 million. The judge was making her decision. We had an oral argument on it. I certainly argued against it, but I'm not sure. I'm led to think of the scene in A Few Good Men when Demi Moore objects and then objects strenuously. It made not a bit of difference. So I could have objected and, you know, Judge, I don't agree with your decision, but would it have reversed the decision? I doubt it. But you made the same arguments then as you're making now. Yes. But it wasn't possible from the charts to figure out whether the hours charged were reasonable. Correct. Whether they were reasonable, whether they were redundant or not. And, again, it's please do what is consistent with the local rules with what the Third Circuit has directed, you know, just do it the right way. Did you agree initially? And I may have missed your point, but did you agree to that 1.5 and 3.7 million range for 20 fees? Yes. You just wanted justification for it. The parties agreed to that. And if the plaintiffs, if class counsel could justify. If they showed you valid documents showing that this is what was spent because of the error in the car and et cetera. If class counsel could justify a load start between 1.5 and 3.7. OK. You know, demonstrate it with the appropriate billings. But I'm curious. What do we do with a case like this? Court would reverse the remand and instruct the district court to engage in to require the materials that local Civil War 54.2 a requires be submitted. And allow the parties or allow my client and perhaps any class members that wish to do so to provide comment on the fee application. And then when the fee application is submitted, certainly go through all the Gunter factors that are required to determine whether it's a fair and reasonable fee. And if the court. Does Gunter really apply to this type of case? The Gunter factors are the ones that guide the court in determining whether a fee is fair and reasonable. In a percentage of the pot or in a load start case. I believe the Gunter factors would apply in each. It's just a question of in the load start in the percentage of the fund case situation. You just use the load star cross check to determine whether the percentage is grossly disproportionate to the load star. Thank you. Thank you. Mr. Grafman. Mr. Grafman.  I'm not sure. Our questions are going to go back and forth. So I'm not sure we're going to necessarily confine one segment to methodology of the load star and the other to the high low agreement. So I am not quite certain how you two really wish to approach this because you're going to get questions on those. And other areas that I have no idea what the line of demarcation is. I will try, Your Honor, to limit my arguments to the high low issue, which we contend really moots every other issue before the court. To the extent that there's a spillover, I will deal with it. I mean, why don't you announce your name and then we'll start. Yes. I apologize. Good morning. Bruce Nagel, Nagel Rice, co-counsel for the plaintiff class. All right. So, okay, Mr. Nagel. And I am addressing at the outset, I'm addressing the issue as to whether the high low agreement grants the defendant in this case any right to even be here. Do they have the right to appeal a high low agreement? And the starting point. They're not appealing the high low agreement. They're appealing. They're appealing the designation of the fee within that range. That is a direct appeal to the award under the high low agreement. The high low agreement. But you have a major problem. You've got cases of our court that require some significant amount of specificity. And you've got a magistrate judge here giving a decision literally, not figuratively, in one page. Half of the page on A436 and part of the page on A437. That, in and of itself, is a bad look. The problem, Judge, is that we need to get over the first hurdle for the defense. And the first hurdle is what is a high low agreement? And I'm going to base my argument on Sereco, the Supreme Court of New Jersey. They're not appealing the high low agreement. They're appealing the allowance of fees and costs, which is an order of the court. Anything below 1.5, you've got an argument there. But if it's above 1.5 million, you've limited it to 3.7. If it's 1.6, they have the right to object, do they not? They do not. They do not. I'm sorry. They have the right to object below, which they did. They have the right to go back to Magistrate Walter and say, would you be more specific in your findings? So they have a right to argue at the district court level the amount. You're saying they waived a right to appeal? Oh, they absolutely. Where's that language? I'm going to tell you where the language is. Okay. It's not there and under the Odyssey case authored by Your Honor. The Odyssey case is different in which, yes, somebody expressly among very sophisticated parties had to reserve. That's not necessarily what this case is about. Well, what the Odyssey case did, which is on all fours here, is Your Honor enforced a stipulation made in the bankruptcy court that if the court found a And what was the wording of that stipulation in the Odyssey? Stipulation. And Your Honor cited that in the event the court made a finding that they would then dismiss everything. And Your Honor cited three times in the opinion the word final, which is exactly the language we used in disagreement and exactly the language I used because I knew, because I argued the Serico case, I was on the losing side of the Serico case when I wanted to challenge the HILO provision in a state court action. And in this case, you're relying on two things, one a stipulation and one a statement at the hearing. Is that correct? In this case, I'm relying upon the expressed language of the settlement agreement, paragraph 8.C. It shall be submitted to Magistrate Walter for critical language, final evaluation and decision. It does not in any way reserve the right of appeal. And we know that BMW in the Gray case, which is cited at footnote 15 of our brief, had used the HILO provision. They know exactly what it was, and they're represented by national counsel. We are not babes in the woods before the court. But why does a final evaluation mean you agree that the magistrate judge is going to decide this? There's no waiver of a right to appeal. Final decision, Your Honor. Final by a magistrate judge. That's right. You might want to go to the district court and say something as compared to having a right to appeal. Is there a case that says that this language is a waiver of appeal? Let me answer that in two parts. Number one, we consented to have the magistrate judge make dispositive rulings here. So that's number one. Number two, does this language say there's no right of appeal? Yes, with the word final. Which case says the word final alone waives a right to appeal? Quite frankly, I would rely upon the Odyssey case. Judge Ambrose, Your Honor, author apparently is disagreeing with me. But when I read Ambrose in the very third paragraph. It's a very different set of facts. Okay. Could you move on to the issue of how the charts that you proposed would satisfy the case law? I'm thinking of the Keenan case, the difficulty with Mr. Sprague's fees. It seems like this is the same kind of thing where we have to speculate. You spent 70 hours, I think, revising complaints. How do we know that that time was reasonably spent? Instead of saying, you know, two hours on this day, 15 hours on this day, and more description of what you did. Judge Rendell, if Your Honor doesn't mind, I would like to just end my portion of the argument and allow my co-counsel to address this very issue that Your Honor raised because that's kind of a carryover. I would like to just tie my argument up, Judge Ambrose. I understand Your Honor clearly disagrees with… This is a class action settlement. That wasn't what we had in Odyssey, right? No, it was not. And there's dicta in Odyssey which distinguishes that. I can tell you that if we go back to the Serico case, which is, that's the dispositive case in New Jersey on what a high-low agreement is. And I want to end my argument by referring to the language in Serico. And that language leaves no question that if you want to negotiate any exceptions, inclusions, or rights of appeal, you have to do it. It says at 234 NJ 168, any outcome between the agreed limits is to be accepted by the parties. It defines a high-low agreement as a settlement. A settlement cannot be challenged. Well, this was in the high-low agreement, was it not? This amount that was awarded. We have a high-low agreement as part of the overall settlement. That high-low agreement is by definition a settlement. All right, and if the court had granted $3.9 million in fees… We're done. And in, at page 351 of Serico, it says a critical aspect of any high-low is finality. Now, that's the critical difference between Your Honor's view of this case and our argument. So, Mr. Nagle, the counsel or your adversary cannot object because it's out of range of what they anticipated or anything like that. In other words, you're saying no objection. You take whatever the judge says as your damages. And the answer is yes, I'm going to put that in context because it really equates to a final and binding arbitration decision. And mind you, in negotiating this, we gave the defense two choices. Let Judge Walter make the final decision or let retired Judge Orlovsky, who had mediated it over the course of two years unsuccessfully, let him make the final decision. If Judge Orlovsky did, it wouldn't be appealable. Of course not. That is a third-party arbitrator. This really set up as a non-appealable settlement provision. Non-appealable. And that's what Serico says. Non-appealable. But could counsel have stood up and objected or gone to court? He did. He did on the record. He did. He did on the record. And mind you, at the end of the opinion, when he was asked, do you have anything further, he didn't say, by the way, you did not apply the standards correctly. By the way, Judge, you accepted summaries as most circuits do. He argued that the summaries weren't sufficient. Did he not? It was a very cursory argument. You look at his comments at the end when the judge said, do you have anything further, Ed? You don't have to say anything further. She already disregarded what he said. Well, let me take a step back. Assuming that's the case, it doesn't affect our lead argument. And our lead argument is when you adopt and use a high-low provision, that is a settlement. And if you want to preserve the right of appeal, you have to put it in the settlement. And we had absolutely no desire to have this case go on for years as it had. Our desire was to end it. So in disagreement at HC, we said this is a final decision. Did your briefing address finality? Of course. That's the lead. It's right. It's all through our brief. We talked about finality. If you'd like, I can cite the pages. I have the brief here. Oh, that's all right. We talked about finality throughout. And I cited through the brief the language from Serico, which talked about finality. And we talked about the fact that this was a settlement. The key is that high lows are settlements. This is not a provision that can be challenged and modified. But the judge has to give. Going back to Odyssey on pages 489 and 490, the opinion reads, the interest that's taken in other cases was different from the issue in Odyssey because in class actions, settlement agreements cannot be approved unless the court determines that they are fundamentally fair, reasonable, and adequate, the purpose of which is to protect unnamed members of a class from unjust or unfair settlements. And we go on. Though it may be in the interest of protecting individual class members requires an explicit waiver of the right to appeal. And we said that that interest didn't apply in Odyssey, which was not a class action, because it involved a dispute between sophisticated business entities. Yes, and what I say here is that the judge did reject one objection out of the 540,000 class members. There was one objection to the fees, and that was assessed and rejected. So the class was protected in that assessment and rejection. This language in no way opens up the right or in any way modifies the SERCO language and the SERCO holding, which says, HILO agreements are settlements, and settlements are to be enforced as negotiated. And if they wanted to have the right of appeal, the settlement never would have happened, because we wanted this done, and they wanted this done. This was an afterthought. They got a bad ruling, and now they say, let's retread the deal. That is not what settlements are about. Settlements are to be enforced in New Jersey. And with that, if there's any other questions, I'm going to defer to Judge Rendell. Your Honor's question about the sufficiency of the summaries, may I turn that over at this point? You sure can. Are there any other issues I should deal with? From your standpoint, this is pretty much game, set, and match. It's done. From my standpoint, and that's why I opened up, and I know Judge Ambrose appeared not to like that argument. I think that this argument, if it's accepted, moots everything else in the case. We have a settlement. It was final, and there's no reason ever to address any other issue. So thank you for your consideration. Thank you. May it please the Court, Gary Grafman from Cantry School, Hamilton Grafman. I'm just going to be brief. I know that Mr. Nagle has used most of our time, I believe. That's all right. What I don't get is how you can decide this case in one page of a transcript. Well, I think, first of all, BMW's analysis of the judge relying only on the billing chart is a very unrealistic, inaccurate, and a very narrow version. What else did she have? The judge had a number of declarations from counsel which outlined in detail the work that was done, some that went on for a number of pages, as to what was done. Don't question time. Why weren't, as he did in, he said in other cases, Mr. Dalton, as I would have done, or Judge Rendell would have done in any bankruptcy case that we were involved with, where fees were approved by the court, you have a very thick set of timesheets, daily, and the time of the persons involved, and then perhaps at the end you can do a summary, but they're all backed up so people can look. Why was that not done here? Well, as Mr. Dalton referenced, we offered it to Judge Walder, but she felt that she had sufficient information, and in her discretion could make a ruling. And the material that she had was, as I was saying, the detailed declarations of counsel that listed all of the work. She had an unrefuted expert opinion as to the value of the settlement, which would be, if nothing else, certainly a cross-check to a Lodestar, which valued the settlement unrefuted between $42 million to $64 million, primarily on the prospective warranty. Stop on the Lodestar, forward and backwards. A Lodestar multiplier is supposed to be, quote, rare. So if it's supposed to be, at the very least from your perspective, let's say it's not rare, seldom used, then you need a whole lot of rationale for why a Lodestar multiplier is in play and should be applied in that particular case. I don't see it on page 8-437. If I may, Judge Embrough, there's a number of reasons. First of all, my adversary is relying on the Purdue and the D'Addago case. Let's just look at what she said. I believe the multiplier would be about 1.9. Which is within approved multipliers in our jurisdiction. I've already approved the class settlement. I think that this falls well within the appropriate Gunter factors. No analysis of Gunter whatsoever. Well, you have to look at it in the context of it. Even if Gunter applied. Yeah. Yeah. I mean, and courts do, even in a Lodestar analysis, use Gunter as kind of a guidepost of factors, although I agree with Your Honor that it's generally used in a common bond. You have to look at it in the context of Judge Walder having had personal overseeing this case. She had 12 different status conferences at which counsel reported what they were working on, what they were doing, what the issues were. But when you give the decision, you have to give reasons. And there are no reasons. Well, I think that, again, you know, her reference. And, you know, no analysis whatsoever that, yes, they're not usually applied, but I think it's appropriate here because. There's nothing after the because. Okay. Well, I think that Judge Walder understood, based on the valuation of this case, that this was an exceptional result which would have justified a multiplier, that it was a unique circumstance because, unlike the federal fee-shifting statutes. Did she say what the exceptional circumstances were? What's that? Did she say what the exceptional circumstances were? Well, I think her reference to the value of the settlement, as she evaluated at $27 million on the record, and I think that in and of itself would have been a basis for the extraordinary response. But she also acknowledged on the record that in this genre of consumer cases, which are auto defect cases, it's kind of a unique genre in that the work continues because in the settlement the defendants require that class members produce records showing that they own the vehicle, that it had this particular defect, that they paid for it, that they did maintenance. And the reason is because these auto cases return dollar for dollar more per claim than any other consumer case. But the defendants need documentation through the claims process. And it was clear on the record to the judge, and she acknowledged it and defense counsel acknowledged it, that we are continuing even today working on this case. I've got two attorneys and two paralegals working on this case. What are they working on? Life would have been a lot easier if two things happened. One, you had submitted more specific and detailed time records, and I still don't have an answer as to why you didn't. And two, if the judge had given a significant amount of reasoning for why there is a lodestar multiplier in a case in which they're usually not given. Well, I would disagree in that they're usually not given in the sense that unlike fee-shifting cases like a federal fee-shifting case, the barrier of entry for class action, consumer class action is very high for a law firm. The reason is because you can be spending hundreds of thousands of dollars over a period of many years before you ever see a recovery. But that's a given. That's not exceptional. That's a given. I mean, I was on the MDL panel. Well, I mean, in order to encourage counsel to vindicate the rights of consumers, there should be some acknowledgement of the risk involved, and there is certainly risk. Well, and there wasn't any analysis. And, in fact, before you brought the litigation, it was already acknowledgement by BMW that there was something wrong. This was not a case where you were, you know, kind of going on a whim. Actually, no, they extended the warranty to 70,000 after we brought the litigation. It was shortly after, but it was after we brought the litigation. I think that, you know, the judge under 54-2 had the right to make a determination in her discretion on the documents that she believed were sufficient. And the reason I say that is. Go back for the third time. Why didn't you have detailed time records? We do have detailed time records. And as my adversary noted on the record, we offered them to the judge. And she said that I find that the billing charts are sufficient to indicate an accurate rendition of what was spent by counsel. I mean, the billing charts were not naked billing charts. They had each of the timekeepers. It had their status as either a partner or an associate or a paralegal. And how much time they spent communicatively, right? Broken down into 12 different components, which the judge was aware of because she had been overseeing the case since the beginning. And she held 12 different status conferences at which the time that was being spent was reported. Not the hours, but what was being done. How do you distinguish this case from our opinion in Kenan? I think in this case, you know, I think that the judge had the discretion in this case because she had a lot of other material that she was able to rely on in making her decision other than just the billing charts. And I think that she was able to rely on both the multiple declarations that we submitted, the evaluation of the case, the fact that she oversaw the preliminary approval motion, the final approval motion, handled any of the objections to the case, held argument on the fee application in which she asked pointed questions of counsel that she deemed in her discretion she needed to understand and know in order to make the decision. We answered the questions and counsel for our adversary answered the questions. And at the end, Mr. Dalton says, quite frankly, that I understand Your Honor has gone through her basis and rationale for making this determination. Did she make a specific request for the fee that you were seeking to have imposed? Well, she knew of the high-low. I see there's a very, very large difference between $1.5 million and $3.7 million. Right. But, you know, another case we handled. We make a request for a specific sum. Yes. We indicated that our lodestar was $1.934 million, $1,934,000. And we asked for what was effectively a 1.82 multiple because even though it was $3.7 million, when you back out expenses. If she accepted that, what would that have given you? She did. She accepted that, yes. The $3.7. Yes, she accepted the $3.7. But $3.7, I would also point out, it was less than we had litigated another case against Volkswagen with a timing chain issue, which the award in that case was $8.6 million. So we were asking for a much higher amount in the negotiation with defendants. Defendants said, we'll agree, but you come down to $3.7, and we'll put a bottom line of $1.5. So we compromised based on this high-low agreement. You weren't forced to agree. No, and neither were they. And they were a sophisticated company. They could have put in the agreement. Plaintiff's counsel will submit to the judge these enumerated documents that are in 5. Why do they need to do that if as a matter of law that's a requirement? Because it's not. Because under 5.42C, it specifically says that in appropriate circumstances, including not limited where counsel fees are sought as sanctions or in connection with discovery or other pretrial motions, the judge or magistrate judge to whom the application is directed may order that any one or more of the items enumerated in Rule 54.2A or B will not be required. Could the conveyance of discretion to the district court be any more clear that she had the right to make the decision as to what she was going to decide on? And this Court, in answer to the other question. I don't know that in an agreement you can change the legal standards for the approval of fees. No, but the Court, well, the Court, the standard is that this Court will allow a district court to dispense with the strictures of the local rule provided that there's a rational basis for doing so. And the second part of that is that the other party is not unfairly prejudiced by its reliance on the local rule to its detriment. It's in the conjunction. It's the conjunctive. So it's and. They have to show both. They cannot show any prejudice by virtue of the judge dispensing with this local rule. And under the. . . That's because it's higher than they contend it should be. Yes, but what I'm saying, the local rule, which allowed the judge to dispense with certain elements of what she would review, is something they didn't rely on in this case. And this Court in U.S. v. 11 Vehicles, which is 200 F. 3rd 203, said specifically that the district court can dispense with the strictures of the local rule provided, again, that it has a sound rationale and that there is no unfair prejudice to a party who relied on the local rule. They cannot say that they relied on the local rule because they agreed to a high-low that included 3.7. And so they couldn't rely on local rule in that respect. And, again, if they. . . There's no evidence they relied on this rule. It's a sophisticated company with an in-house law firm. They could have said in the agreement, you will submit to the judge your time records. You will submit to the judge this. They didn't do that. They didn't rely on 54.2a. And, therefore, under U.S. v. 11 Vehicles, this Court's jurisdiction to say to the district court, you dispense with local rule 54.2 is limited. But that doesn't dispense with an analysis under Kenan, does it? Well, I mean, the judge did do an analysis. I mean, you know, I guess you're saying that it should have been a monthly analysis. And there you even had a monthly chart. I'm sorry? Kenan was a chart detailing the monthly cumulative totals of the attorneys, right? Right. But here, I mean. . . Way beyond that. Here we have other materials that the judge relied on as well. Well, what are they? I mean, again. . . Well, if you look at our. . . If you want to go back at this, wouldn't the easy thing say to the judge, I think you need to fill in the gaps here? Again. . . I mean, it's being treated almost like an arbitration. I mean. . . This person is going to make a decision, give no reasoning, and that's going to be it. But that's not. . . I don't think that's what we have before us. But I think this. . . You know, Your Honor, the courts have relied on, and this Court has approved, for example, in diet drugs and in unright aid, the ability of the court to look at summary charts rather than going line by line through thousands of papers. Were those percentage of the. . . Well, I think in a percentage case, it would be more important to go through the records. I mean. . . But that's coming out of the class. Here. . . That leads to another question. And Purdue came out, what, 2011, 2010? Yes. But, again, that's been very limited by courts. If you look at courts that have. . . No, but the Supreme Court. . . It's the fee-shifting cases generally, even though that was a civil rights case. Yeah. I don't see anything in Purdue that necessarily limits it solely to civil rights cases. Well, if you look at the cases that discuss Purdue, you'll see that most courts will limit it to the federal fee-shifting statutes. And the Supreme Court of New Jersey has looked at it and said that it does not overrule Rendine, and Rendine would control. But your argument is that, quote, courts routinely find in complex class actions that a lodestar multiplier of between one and four is fair and reasonable, close quote. But the cases you cite all predate Purdue. Right, but these cases are not federal fee-shifting statutes. And the difference is, again, that the cases that, the class action cases that are consumer cases are. . . In the fee-shifting statute, and I've tried to verdict civil rights cases, and the courts generally say that there's other firms that will take these civil rights cases, and there's lots of firms that will do it, and, you know, the amount that you should be getting should be satisfied by the lodestar because that's what the market bears. In class actions, it's a little different, and especially these types of class actions, where you might spend hundreds of thousands of dollars up front. Yeah, I mean, in cases like Sendint and others, I mean, but the lodestar even was used only as a crosscheck, was it not? Right. Against the percentage of the fund calculation. Right. Is there any recent case where we've approved a lodestar multiplier within the range that you know, between one and four outside the context of a crosscheck against the percentage of the fund calculation? I'm trying to think if I know of a case. . . I mean, the Rite Aid case, the diet drug case, Your Honor points out those cases may have been prior to Purdue, but I don't think Purdue affects any of that. I don't see how it affects it because it's, again, a federal fee-shifting case, and all of the cases that have discussed it limit it to that type of determination. But, I mean, in this case, Judge Walder's decision, I mean, she did go through the factors. Let's be clear about that. She first found that the hourly rate was within the type of rate that class action in the district charged. And the billing, despite what Mr. Dalton says, is more than sufficient to satisfy me that it's a good indicator of time spent. There was a nice chart with volumes. I don't know what that means, but other than it was a nice chart. Mr. Dalton argues it's not sufficient because particulars weren't enumerated. I find that the bills submitted were definitely sufficient. She was talking about the billing chart. I think there was just an error there. Obviously, it was the billing chart she was referring to because that's what she was looking at and relying on. We didn't submit our bills. But to make her go through and other district courts go through line by line thousands of pages or hundreds of pages. . . More than one page. Well, but I'm saying we submitted a lot of material to her. I mean, we submitted. . . But you need more than one page of analysis by the deciding judge. I'm sorry? You need more than one page of analysis or, in effect, it's very conclusory. A brief, conclusory statement. That's not enough for us to make a call. Well, I mean, again, if you look at all the other materials she looked at, you know, Judge Walter had a basis to do it. And in her discretion. . . And that goes back to my question to you. Maybe, in hindsight, you should have said, Judge, I think we need a little more. Well, I mean, in hindsight, as I'm sure there's a lot of other things I could have done. But the real question is whether she had the discretion to dispense with the time records. And under Rule 5.42C. . . Well, but not under Kenan. But not under Kenan. So, I mean, you know, Kenan had charts. We used charts. Kenan had monthly charts. You've got how many year charts? Three year? We did an original chart and then we supplemented it, I believe, three times more up to the date so that we had three charts. Is it really a fair indicator of what the true value is or what the amount of time that was used to generate the fees that are requested? Well, I think the fair indicator would be the value of the case, which was no contest. The value of the case as opposed to the time spent? Well, the time spent plus a multiplier based on the extraordinary circumstances, which is one of the standards, right? of litigation and quality of attorney's work. That's what this Court said in Rite Aid. And I think we met all three factors to justify a multiplier, which was we had an extraordinary result. The quality of work, I think, was demonstrated by, if nothing else . . . Is that in her decision? I'm sorry? Is that in her decision? I mean, you may win in the end. I'm not saying you don't. And you may deserve to win. I just need more to let me know if you're right. Well, again, I think that, you know, the question is how much discretion will this Court give the district court in what they will need to look at and how much time are they going to . . . You can give discretion provided that there's some backup. Well, again, we think that there was backup, but that is, of course, in addition to Mr. Nagle's point, which is that under Odyssey, we think that this high-low was a binding agreement that we entered into . . . Having written Odyssey, it doesn't apply. It was not meant to apply to class action settlements. Well, in Odyssey, Your Honor did say that, you know, to protect the interests of the class. But here we have a sophisticated international business entity with an in-house law firm. I don't think that they . . . We're talking about, you know, the fees in a case that you've agreed to a range. And they have a right to challenge within the range. And if we decide that they haven't, once that was determined, however it was determined by the district court, that they did not have a right to appeal is one thing. But it looks in this case as if Odyssey doesn't apply to this particular set of facts. That's all I'm saying. We were obviously . . . Respectfully disregarding . . . What that means, I can't say. I would just urge Your Honor to take another look at it because I think in Odyssey, the reference to class action meant to protect the class members who could object to a legal fee, which ultimately there was one passing mention and one objection early on and nobody . . . But it was in the context of other statements that the person made and it was very generic. But, you know, here we have a party-to-party agreement. And I think that, you know, we sacrificed what we were arguing for and would have presented the judge as a legal fee, and then we got kind of sandbagged on it. And I don't think that was a very appropriate . . . Thank you. Thank you. We gave you a good 20 minutes. Thank you. Thank you. Mr. Dalton, do you want to add anything? I agree with Your Honor that Odyssey doesn't apply here, as Your Honor said. The cases like Enri Horizon, Deepwater Horizon, Martinez, the Teamsters case, class actions are different. And if you're going to have a waiver, it needs to be clear and explicit. Do just one point, Mr. Dalton. Mr. Nagel says that this case is settled. That's what you went to the court for, the district court, before Judge Walder. You both made a proposal. You both gave Judge Walder the proposal in order to have the settlement and to make a decision. Did you not entrust Judge Walder with making a decision as to what each side should have in this case? Sure. Breaking it up into two parts. The substance of relief to the class was settled. And that went into effect before we got the fee. Did you reserve anything before the judge so that you could, if you didn't agree with the figure that she came out with, you would be able to contest it or oppose it? Candidly, Judge, there's no specific carve out. And that's why. Because if it is a settlement, that's entitled to significant deference. Understandable. We settled the substance of relief to the class. But in Judge Ambrose's case, and as he said, odyssey doesn't apply, in those cases that his honor cited, the Deepwater Horizon, the Teamsters case, the courts there said that if you're going to carve something out from the settlement, and in those cases there were certain carve outs from the settlement, a waiver of an appellate right needs to be clear and unmistakable. And in the class action setting as well, because remember, this court said in 1995 in the GM pickup truck case, the district court has to engage in a thorough analysis of the fee application. Well, if there was an implicit, not explicit, waiver of the ability to bring to this court's attention the district court's failure to abide its fiduciary obligation, under Rule 23 and under this court's case law, to engage in that thorough analysis, well, you'd never know about it. So to impose an implicit waiver would essentially eviscerate this court's ability to maintain its obligation to review what district courts do and to make sure they do it right. And from your point, what you're requesting is basically a do-over or ask the court to make a decision within the range that both of you agreed to? Well, the court made the decision within the range, but we have no understanding why. And as Judge Ambrose said, you know, four pages in Judge Rendell 2, four pages of summary billing charts encompassing three years of work across 16 timekeepers across three law firms really isn't sufficient. And just parenthetically, those cases that this court approved, the district court's reliance upon summary charts, which did predate Purdue and also were common fund cases such as Diet Drugs, Diet Drugs 2, and the Prudential case, the district court in those instances had appointed essentially a special master to review the time and billing entries of the attorneys who had to submit their billing records. Before the district court, did you object to the lack of specificity or did you focus on the lodestar? Oh, our brief here is essentially our brief there. There is no specificity as required. In the argument before the court, I think you focused on the lodestar. I did mention the specificity, I'm pretty sure, you know. I'll go back. But, you know, we had our brief argument and tried to put the points on the record and the judge made the decision that she was going to make. Thank you very much. Thank you to all counsel for being with us today. And we'll take the matter under advisory. Thank you, Judge.